UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **DAN ABRAMS, et al.,**<br><br>                          Plaintiffs,<br><br>-against-<br><br>**LIFE MEDICAL TECHNOLOGIES, INC., et al.,**<br><br>                          Defendants. | Civil Action No. 14-CV-3464 (TPG) |

**MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS BY
LIFE MEDICAL TECHNOLOGIES, INC.**

Eaton & Van Winkle LLP
3 Park Avenue, 16th Floor
New York, NY 10016

On the Brief:

Robert Rickner

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................................i

TABLE OF AUTHORITIES ........................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF FACTS .............................................................................................................. 2

    I.    The Parties ............................................................................................................. 2

    II.    The Allegations in the Amended Complaint ........................................................ 3

    III.    Procedural History ................................................................................................. 3

ARGUMENT .................................................................................................................................. 4

    I.    Applicable standard under Rule 12(b)(6) .............................................................. 4

    II.    Plaintiffs cannot claim they were fraudulently induced to purchase securities in 2007 through 2010 based on statements made in 2011. ........................................ 5

    III.    Plaintiffs lack standing to bring direct claims against Life Medical for mismanaging itself; to the extent these claims are even viable, they must be brought in a derivative action. ..... 6

    IV.    Discovery should be stayed while this motion to dismiss is pending. ................. 9

CONCLUSION ............................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Albert v. Alex Brown Mgmt.*, No. Civ.A. 762-N, 2005 WL 2130607
 (Del. Ch. Aug 26, 2005) .................................................................................................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................4

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ...........................5

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................................4

*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991) ...............................5

*Debussy LLC v. Deutsche Bank AG*, No. 05-CV-5550(SHS), 2006 WL 800956
 (S.D.N.Y. Mar. 29, 2006) *aff'd* 242 Fed.Appx. 735, 736 (2d Cir. 2007)...............6, 7, 8

*Evergreen Mut. Funds Fee Litig.*, 423 F. Supp. 2d 249 (S.D.N.Y. 2006)........................8

*Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 655 F.3d 136 (2d Cir. 2011) ......................4

*Kramer v. W. Pac. Indus. Inc*, 546 A.2d 348 (Del. 1988) .......................................7, 8, 9

*NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, - F.3d - , No. 13-830-CV,
 2014 WL 6462825 (2d Cir. Nov. 19, 2014) ...............................................................6, 8

*Revak v. SEC Realty Corp.*, 18 F.3d 81 (2d Cir. 1994) ......................................................5

*San Diego County Employees Ret. Ass'n v. Maounis*, 749 F. Supp. 2d 104
 (S.D.N.Y. 2010)..............................................................................................................9

*Spencer Trask Software and Info. Servs LLC v. RPost Int'l Ltd*,
 383 F. Supp. 2d 428 (S.D.N.Y. 2003) ...........................................................................5

*Sperry v. Crompton Corp.*, 8 N.Y.3d 204 (N.Y. 2007) .......................................................6

*Tooley v. Donaldson, Lufkin & Jenerette, Inc.*, 845 A.2d 1031 (Del. 2004)....................7

*Vacold LLC v. Cerami*, 545 F.3d 114 (2d. Cir. 2008) .......................................................5

**Statutes**

15 U.S.C. § 77zl(b)(3)..............................................................................................................9

15 U.S.C. § 78u-4(b)(1)(B).....................................................................................................4

Fed. R. Civ. P. 12(b)(6)............................................................................................................1

Fed. R. Civ. P. 9(b) ............................................................................................................................4

Defendant Life Medical Technologies, Inc. hereby submits this memorandum of law in support of its motion to dismiss under Rule 12(b)(6) in all respects the claims against them in the Amended Complaint made by the Plaintiffs who purchased shares in 2007 through 2010, and to dismiss the common law negligence claims of all the Plaintiffs. In addition, Life Medical moves for an automatic stay under the Private Securities Litigation Reform Act.

## PRELIMINARY STATEMENT

Plaintiffs bought shares in Life Medical, mostly in 2007 through 2010, and now they want their money back. They claim they are entitled to this refund under two untenable theories. First, the Plaintiffs who purchased shares in 2007 through 2010 claim they were fraudulently induced to buy them by misstatements and omissions in a private placement memorandum from 2011. This is, of course, impossible. Plaintiffs already owned the shares and could not be influenced by a document that did not even exist yet. Plaintiffs try to hide this fact by simply leaving all the important dates out of their Amended Complaint. This Court should not be fooled. The subscription agreements showing when Plaintiffs actually bought their shares are attached to this motion, and this Court can rely on these documents to fill in the missing in dates and dismiss their claims.

Second, all Plaintiffs claim that Life Medical is liable for negligently mismanaging itself. Even if this strange theory is viable, it is a paradigmatic derivative claim under Delaware law because it alleges mismanagement. Plaintiffs have no standing to bring this claim directly, so it should be dismissed.

Finally, this Court should grant an automatic stay under the Private Securities Litigation Reform Act while this motion is pending.

**STATEMENT OF FACTS**

**I.   The Parties**

Defendant Life Medical Technologies, Inc. is a privately held Delaware corporation that is trying to market and manufacture a breast cancer detection device called the BreastCare DTS.[1] AC ¶¶ 2-4.

There are over fifty different Plaintiffs. The majority purchased or acquired their shares between 2007 and 2010:

- Plaintiffs who bought or acquired shares in 2007: Richard Dell'Anno, James Matthews, Gordon Ostojic, Fred Reynolds, Randy Reynolds, Vincent J. Schiro, and Eric Swann. Rickner Decl. ¶¶ 11, 29, 32, 36-37, 40, 45.[2]

- Plaintiffs who bought or acquired shares in 2008: Jeffery D. Carlson and Katherine A. Barnett Carlson, Steve D'Elia, Jacqueline Legault Dederich, Kenneth Luft, Leslie J. and Sandra L. Nanberg, Gordon Ostojic, Vincent J. Schiro, and Steven Small. *Id*. at 8-9, 12, 26, 30, 40, 42.

- Plaintiffs who bought or acquired shares in 2009: Ginette Davediuk, Caroline Lieberman, Tammie Savage Caputo, and Steven Small. *Id*. at 10, 25, 39, 42.

- Plaintiffs who bought or acquired shares in 2010: Dan Abrams, David Ben-Asher and Sandra Dick, Adrian Bernick, Deborah Bernick, John and Karen Beierschmitt, Sara Cavendish, Arnold Fuchs, Richard and Barbara Gambino, Ethell Geller, Meg Gerson, Aaron Gindi, Eric Gustavo Gorbitz, Becky Grimm, Joseph Kanner, Patricia Kozu, Frank Leiber, Patricia Oppito, Carol Posner, Ed Poteat, Devineni and Basabi Ratnam, Rosanna Sattler, Edward Smith, Barbara and Burton Sulzer, Lenard Thylan, Ashok and Bansie Vasvani, and Joy Willig. *Id*. at 2-7, 14-20, 22-24, 31, 33-35, 38, 43-44, 46-48.

A small number of Plaintiffs bought shares in 2011 and 2012: Jodi Friedman, Michael Hamby, Wayne Margolies, Gwenn Martin, Jay Silverman. *Id*. at 13, 21, 27-28, 41.

---

[1] Exhibits attached to the Declaration of Robert Rickner, Esq. dated November 24, 2014 ("Rickner Decl.") are abbreviated as "Ex. _". The Amended Complaint is attached as Exhibit 50 and is abbreviated as "AC ¶¶ _".

[2] Ted Doukas is listed in the Amended Complaint's caption and in the introductory section before the numbered paragraphs, but he is not actually named as a plaintiff in the Amended Complaint. To the extent that he is a Plaintiff, however, he purchased his shares in 2007. Rickner Decl. ¶ 55.

## II.     The Allegations in the Amended Complaint

There are two sets of allegations in the Amended Complaint. The first set of claims – securities fraud under Section 10(b) and 20(a) of the Securities Exchange Act of 1934, common law fraud, negligent misrepresentation, and unjust enrichment – are based on alleged misstatements and omissions regarding Life Medical's financial condition and the BreastCare DTS. AC ¶¶ 3, 5, 8-54, 64-68, 82-106, 122-154, 170-178. These misstatements and omissions were made in a private placement memorandum from July/August 2011. *Id*.; Ex. 46 (the "July/August 2011 PPM").

The second set of claims alleges that Life Medical was mismanaged by, for example "Failing to inspect the corporate books," "Squandering Life Medical's limited financial resources," and "Failing to supervise." *Id*. at ¶¶ 166-169. Life Medical is not included in the breach of fiduciary duty claim, but Life Medical is accused of mismanaging itself in the common law negligence claim. *Id*. at ¶¶ 155-169.

## III.    Procedural History

The law firm of Napoli Bern Ripka Shkolnik, LLP filed a complaint on behalf of Horberg Enterprise Limited, Partnership and John Anascavage on October 17, 2012. 12-cv-7748 (TPG), Dkt. No. 1. An amended complaint was filed on March 14, 2013. Ex. 48. The derivative action and the Horberg complaint both claim Life Medical was mismanaged. *Compare* Ex. 47 ¶¶ 1-80 *with* Ex. 48 ¶¶ 17-86. Life Medical's insurance company defended the Horberg lawsuit, and the law firm they hired moved to dismiss on April 19, 2013. Ex. 49. That motion was denied, without an opinion, on March 31, 2014. 12-cv-7748 (TPG), Dkt. No. 30.

Soon after the motion to dismiss was denied, the same firm filed this lawsuit, now with more than fifty plaintiffs. Ex. 49. The insurance company refused to defend, so Life Medical hired its own counsel. *See* Docket 14-cv-3464 (TPG). The Amended Complaint was filed on October 9,

3

2014. Ex. 49. The claims in the Amended Complaint are almost identical to the claims in the Horberg case. *Compare* Ex. 48 ¶¶ 87-156 *with* AC ¶¶ 122-182.

## ARGUMENT

### I.     Applicable standard under Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs must plead facts that state "a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is not "plausible" where the alleged facts are "merely consistent" with a defendant's liability or do not "permit the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In considering a motion to dismiss, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then, after eliminating the conclusory allegations, determines whether the remaining facts, if accepted as true, "plausibly give rise to an entitlement to relief." *Id*. at 679. The standard "is not so liberal that a threadbare recital of the elements of a claim, supported by mere conclusory statements, can suffice to defeat a motion to dismiss." *Interpharm, Inc. v. Wells Fargo Bank, N.A.*, 655 F.3d 136, 141 (2d Cir. 2011) (citation omitted).

Plaintiffs cannot sustain their claims with vague statements of wrongdoing. They must plead the alleged frauds in detail. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); 15 U.S.C. § 78u-4(b)(1)(B) ("the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed").

Further, in deciding this motion to dismiss, this Court can consider any documents incorporated into the Amended Complaint by reference, like the July/August 2011 PPM that

contains the alleged misstatements, and any documents the Plaintiffs relied on in bringing suit, like the subscription agreements that show when they bought shares. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Moreover, Plaintiffs cannot defeat a motion to dismiss simply by leaving inconvenient facts out of the Amended Complaint – like the fact that most of the Plaintiffs bought their shares years before the July/August 2011 PPM. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 44 (2d Cir. 1991) ("Plaintiffs' failure to include matters of which as pleaders they had notice and which were integral to their claim—and that they apparently most wanted to avoid—may not serve as a means of forestalling the district court's decision on the motion.").

## II. Plaintiffs cannot claim they were fraudulently induced to purchase securities in 2007 through 2010 based on statements made in 2011.

Plaintiffs cannot claim they were fraudulently induced to purchase securities in 2007 through 2010 based on statements made in 2011. No matter how the cause of action is framed, there must be some connection between the alleged misstatements and omissions, and the Plaintiffs' decision to buy shares in Life Medical: Under Section 10(b) and 20(a) of the Exchange Act, the misstatement or omission must be made before (or contemporaneously with) the purchase or sale of securities. *See Vacold LLC v. Cerami*, 545 F.3d 114, 121-22 (2d. Cir. 2008) (dismissing claim because the securities were purchased in April and the alleged omission was in June). To plead a common law fraud claim, a plaintiff must show that the misstatement or omission "caused the plaintiff to engage in the transaction." *See Spencer Trask Software and Info. Servs LLC v. RPost Int'l Ltd*, 383 F. Supp. 2d 428, 455-56 (S.D.N.Y. 2003). Similarly, "negligent misrepresentation requires a showing of proximate cause." *Revak v. SEC Realty Corp.*, 18 F.3d 81, 90 (2d Cir. 1994). And to sustain an unjust enrichment claim, there must be some direct

5

connection between the defendant's conduct and the plaintiff's loss. *See Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 216 (N.Y. 2007).

Plaintiffs copied their claims from the Horberg complaint. But in Horberg, the plaintiffs bought their shares in 2011, so they could at least claim they were defrauded by the July/August PPM. The Plaintiffs who bought shares between 2007 and 2010 cannot possibly have relied on a document that did not even exist yet. Plaintiffs needed to plead their fraud claims in detail. Instead, they copied a prior complaint and then left out all the dates so, on the surface, it looked like they might have a case. They do not, and their claims should be dismissed.

### III. Plaintiffs lack standing to bring direct claims against Life Medical for mismanaging itself; to the extent these claims are even viable, they must be brought in a derivative action.

Plaintiffs lack standing to bring direct claims against Life Medical for mismanaging itself; to the extent these claims are even viable, they must be brought in a derivative action. Individual shareholders have no standing to bring corporate mismanagement claims directly. These are paradigmatic derivative claims because the claimed injury is to Life Medical itself. Plaintiffs even admit that the claimed injury is to Life Medical and that their injury is indirect, caused by a drop in stock price. AC ¶¶ 7, 70-74, 163. Therefore, Plaintiffs' claims against Life Medical for common law negligence should be dismissed.

Life Medical is a Delaware corporation. AC ¶ 55. Therefore, to determine whether the shareholders have standing to bring a claim directly, Delaware law applies. *See Debussy LLC v. Deutsche Bank AG*, No. 05-CV-5550(SHS), 2006 WL 800956, at *3 (S.D.N.Y. Mar. 29, 2006) *aff'd* 242 Fed.Appx. 735, 736 (2d Cir. 2007) ("the District Court was correct in applying Delaware law"); *see also NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, - F.3d - , No. 13-830-CV, 2014 WL 6462825, at *9 (2d Cir. Nov. 19, 2014) (applying Delaware law and certifying a novel question regarding direct and derivative claims to the Supreme Court of Delaware).

6

The Delaware courts have long held that shareholders lack standing to make direct claims against directors for mismanaging a corporation. In *Kramer v. W. Pac. Indus. Inc*, the shareholders made direct claims against the board of directors for wasting corporate assets by mismanaging a merger that included $18 million in unnecessary fees and expenses. 546 A.2d 348, 350 (Del. 1988). The Court of Chancery dismissed the case and the Supreme Court of Delaware affirmed, finding that the claims belonged to the corporation and should have been brought derivatively on behalf of the corporation, not directly by the shareholders:

> Delaware courts have long recognized that actions charging mismanagement which depress the value of stock allege a wrong to the corporation; i.e., the stockholders collectively, to be enforced by a derivative action. … A claim of mismanagement resulting in corporate waste, if proven, represents a direct wrong to the corporation that is indirectly experienced by all shareholders. Any devaluation of stock is shared collectively by all the shareholders, rather than independently by the plaintiff or any other individual shareholder. Thus, the wrong alleged is entirely derivative in nature.

*Id*. at 353 (citations omitted).

Over time, courts sought to carve out exceptions to this rule, allowing certain direct claims to go forward because they alleged a "special injury" unique to an individual shareholder. *See Tooley v. Donaldson, Lufkin & Jenerette, Inc.*, 845 A.2d 1031, 1034, 39 (Del. 2004). But in *Tooley* the Supreme Court of Delaware extinguished this judicially-crafted exception in favor of a simple rule: "The stockholder's claimed direct injury must be independent of any alleged injury to the corporation. The stockholder must demonstrate … that he or she can prevail without showing an injury to the corporation." *Id*. at 1038-39. Phrased differently, if a "stockholder must show injury to the corporation to prevail, then the suit may not be brought directly." *Debussy LLC v. Deutsche Bank AG*, No. 05-CV-5550(SHS), 2006 WL 800956, at *3 (S.D.N.Y. Mar. 29, 2006) *aff'd* 242 Fed.Appx. 735 (2d Cir. 2007) (citing *Kramer* and *Tooley*); *see also NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, - F.3d - , No. 13-830-CV, 2014 WL 6462825, at *6 (2d Cir. Nov. 19,

7

2014) (recognizing that under *Tooley* there is a strict rule prohibiting direct claims where the corporation is also injured).

The *Tooley* test reinforces – in fact requires – *Kramer's* finding that mismanagement claims are derivative in nature and cannot be brought directly by shareholders. If a director mismanages a corporation, by necessity the corporation itself is injured by this mismanagement. *See Debussy*, 2006 WL 800956 at *3-4. Any injury to the shareholder is caused indirectly by a drop in the stock price. *Id*. Only in a bizarre hypothetical could a director's mismanagement of a corporation injure a single shareholder without any damage to the corporation itself.

Moreover, under *Tooley*, the way the plaintiff frames the complaint is largely irrelevant in the analysis. "[T]he Court will independently examine the nature of the wrong alleged and any potential relief to make its own determination of the suit's classification." *Tooley*, 845 A.2d at 1035. "Plaintiff's classification of the suit is not binding." *Id*.

Following *Tooley*, courts in the Southern District of New York consistently dismiss direct claims that allege corporate mismanagement for lack of standing – whether framed as breach of fiduciary duty, gross negligence, or corporate waste – because these claims can only be brought as derivative action. In *Debussy*, the plaintiff claimed a breach of fiduciary duty because its investment was obliterated by Deutsche Bank's poor management of a trust. *Id*. The court dismissed the claim for lack of standing: "plaintiff's claim is that defendants have mismanaged the Trust; that claim is a derivative one …" 2006 WL 800956 at *4. In *Evergreen Mut. Funds Fee Litig.*, the plaintiffs brought direct unjust enrichment and breach of fiduciary duty claims because the defendants paid excessive fees and commissions, and failed to supervise and monitor the company. 423 F. Supp. 2d 249, 260-61 (S.D.N.Y. 2006). The court dismissed the claims because "the gravamen of these allegations is that Defendants mismanaged assets" and thus "Plaintiffs

have failed to demonstrate that the injuries alleged in the Complaint are not dependent upon harm to the Funds, as required by Delaware law." *Id*. Finally, in *San Diego County Employees Ret. Ass'n v. Maounis*, the plaintiffs claimed gross negligence because the defendants failed to control and monitor risk, losing $150 million. 749 F. Supp. 2d 104, 126 (S.D.N.Y. 2010). The court dismissed, calling the claims "paradigmatic derivative claims." *Id*. (quoting *Albert v. Alex Brown Mgmt.*, No. Civ.A. 762-N, 2005 WL 2130607, at *13 (Del. Ch. Aug 26, 2005) and citing *Kramer*).

Here, Plaintiffs' common law negligence claim focuses on Life Medical's alleged failure to properly run itself: "Failing to inspect … Failing to manage … Squandering … Wasting … Failing to supervise." AC ¶¶ 168. As a matter of corporate structure, it is difficult to imagine how Life Medical could be liable for inflicting harm on itself. A company is run by people; it does not manage itself. But even if these claims are viable, Plaintiffs have no standing to bring them directly.

**IV.     Discovery should be stayed while this motion to dismiss is pending.**

Discovery should be stayed while this motion to dismiss is pending. Under the Private Securities Litigation Reform Act ("PSLRA") "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss" in a securities case. 15 U.S.C. § 77zl(b)(3). The stay is automatic, and can only be lifted under exceptional circumstances. *See In re: Initial Pub. Offering Sec. Litig.*, 236 F. Supp. 2d 286, 286-88 (S.D.N.Y. 2002). Life Medical is moving to dismiss Plaintiffs' securities claims, so there is an automatic stay under the PSLRA, and discovery should not begin unless this motion is denied.

## CONCLUSION

For the reasons detailed above, the misrepresentation claims against Life Medical by the Plaintiffs who purchased their shares in Life Medical from 2007 to 2010 should be dismissed for failure to state a claim, and the common law negligence claims against Life Medical by all Plaintiffs should be dismissed for failure to state a claim.

Dated:   New York, New York
           November 24, 2014

EATON & VAN WINKLE LLP

By:_____
       Robert Rickner

*Attorneys for Defendants*
*Peter Kelly and Terry Lierman*

Three Park Avenue, 16th Floor
New York, New York 10016
Tel:    (212) 561-3605