UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



DAN ABRAMS, *et al.*,

                Plaintiffs,

      - against -

LIFE MEDICAL TECHNOLOGIES, INC.,
*et al.*,

                Defendants.

14 Civ. 3464

**OPINION**

This case arises from the failure of Life Medical Technologies, Inc., a medical devices company. Plaintiffs, a large group of investors who lost money in Life Medical shares, allege that defendants secured plaintiffs' investments through fraud and badly mismanaged the company. They bring federal securities fraud claims, as well as claims for breach of fiduciary duty, common law fraud, negligent misrepresentation, negligence, and unjust enrichment. Defendants, Life Medical and affiliated persons, move to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u–4(b). Those motions are now before the court.

The motions are granted in part and denied in part.

## Procedural History

Plaintiffs in this case filed an amended complaint ("the complaint") on October 9, 2014. On November 24, 2014, defendant Life Medical moved to dismiss. On the same date, defendants Kelly and Lierman, directors of Life Medical, filed a separate motion to dismiss. On December 16, 2014, defendant Fitzgerald, a former Life Medical CEO, filed a motion to dismiss *pro se*.

This court held oral argument concerning these motions on May 8, 2015. There, the court directed plaintiffs to file a supplement clarifying ambiguities as to which individual plaintiffs in the complaint were alleging reliance on which particular statements by defendants. Plaintiffs filed such a supplement on June 22, 2015.

After receiving permission from the court, defendants Life Medical, Kelly, and Lierman jointly filed an additional memorandum in support of their motions to dismiss on August 7, 2015. Fitzgerald did the same on August 13, 2015. Plaintiffs filed a response on September 18, 2015.

## The Complaint

The following facts from the complaint are taken as true for purposes of this motion.

Life Medical is a privately-held Delaware corporation with its principal place of business in New York. In 2007, Life Medical purchased licensing rights in a breast disease detection device known as the BreastCare DTS ("BreastCare device"). (Dkt. No. 22, Am. Compl. ¶ 62.) Life Medical purported to devise plans for the manufacture and international marketing of this device. (Id. ¶¶ 84-100.) In 2009, Life Medical acquired substantially all of the assets of the company that invented the BreastCare device. (Id. ¶ 64.) As of the date of the complaint, Life Medical had neither sold any BreastCare devices, nor reported any revenue. (Id. ¶ 69.) Between 2009 and 2011, the market value of Life Medical declined from approximately $32.6 million to approximately zero. (Id. ¶¶ 71-72.) Plaintiffs allege that this failure was a consequence of malfeasance by defendants. (Id. ¶¶ 6-7.)

At different times between 2007 and 2011, the various plaintiffs named in the complaint purchased a total of about $3.8 million in Life Medical stock. Each plaintiff decided to invest in reliance on one or more of the following: (1) oral representations made by defendant and former Life Medical CEO Carol Fitzgerald between 2007 and 2011; (2) a March 22, 2010 business plan or executive summary thereof ("2010 business plan"); (3) a private placement memorandum dated July or

- 3 -

August of 2011 ("2011 PPM"); and (4) other offering materials including subscription agreements, financial projections, and information on the company website. (Id. ¶¶ 3-54; Dkt. No. 47, Supp. to Am. Compl. at 1-25; Dkt. No. 29, Rickner Decl. Ex. 46; Dkt No. 39, Rickner Decl. Exs. A-C.)

In August 2012, Life Medical responded to a shareholder document request made pursuant to Section 220(b) of the Delaware General Corporation Law.   Through that request, plaintiffs learned that representations upon which they had relied in making their investments were false. (Dkt. No. 22, Amended Complaint ¶ 12.) Specifically plaintiffs learned that Life Medical and Fitzgerald intentionally or recklessly misrepresented (1) how invested funds would be used to market the BreastCare device; (2) defendants' intention to use investment funds to satisfy preexisting legal obligations; (3) the status of the BreastCare device's patents and regulatory approvals; (4) the company's capacity to manufacture BreastCare devices; (5) the BreastCare device's prospects for overseas sales; (6) Atlantic Accelerator, Ltd.'s assessment of Life Medical; (7) Life Medical's distribution agreement with a Canadian company; (8) the relevance or validity of certain clinical studies; (9) the accuracy of financial projections; and (10) that Life Medical was

- 4 -

obtaining certification as a "woman owned business" in order to benefit from certain grants and programs. (Id. ¶¶ 75-106.)

The complaint also contains allegations of mismanagement. Plaintiffs contend that defendants misallocated investment capital and failed to maintain necessary regulatory approvals and patents. (Id. ¶¶ 76-81.) Plaintiffs also contend that Life Medical's directors ignored various indicators of Fitzgerald's incompetence or malfeasance. (Id. ¶¶ 113-14.) Furthermore, according to the complaint, Life Medical's directors and officers failed to provide plaintiffs with accurate information, neglected to hold shareholder meetings, concealed problems with the company, and engaged in self-dealing. (Id. ¶¶ 107-11, 156-64.)

Plaintiffs bring causes of action against Life Medical and Fitzgerald for violations of Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10-5. Against Life Medical, they bring causes of action for control person liability under Section 20(a) of the 1934 Act, 15 U.S.C. § 78(t). They further allege common law fraud, negligent misrepresentation, and unjust enrichment against Life Medical and Fitzgerald. Finally, plaintiffs allege breaches of fiduciary duty against Kelly and Lierman, common law negligence against Life Medical, Kelly, and Lierman, and seek punitive damages against all defendants.

## Motion to Dismiss Standard

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must plead sufficient facts to state a claim to relief that is plausible on its face. Ashcroft v. Iqbal, 556 U.S. 662, (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In deciding such a motion, a court must accept as true the facts alleged in the complaint, but it should not assume the truth of any legal conclusions. Iqbal, 556 U.S. at 678-79. A court must also draw all reasonable inferences in the plaintiff's favor, and it may consider documents attached to the complaint, incorporated by reference into the complaint, or known to and relied on by the plaintiff in bringing the suit. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

Moreover, "[a]ny complaint alleging securities fraud must satisfy the heightened pleading requirements of the PSLRA and Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud." ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co., 553 F.3d 187, 196 (2d Cir. 2009). Specifically, "[t]he PSLRA expanded on the Rule 9(b) standard, requiring that securities fraud complaints specify each misleading statement; that they set forth the facts on which [a] belief that a statement is misleading was formed; and

that they state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." Anschutz Corp. v. Merrill Lynch & Co., 690 F.3d 98, 108 (2d Cir. 2012) (internal quotation omitted).

## Discussion

### I.  Whether Plaintiffs' Share Purchases Predate the Alleged Misrepresentations, and Whether Plaintiffs Allege Misrepresentations with Sufficient Particularity

Defendants contend that some plaintiffs named in the complaint, who purchased shares from 2007 to 2010, are attempting to claim that they invested in Life Medical in reliance on representations that were made after they purchased their shares—namely, representations in the 2010 business plan or 2011 PPM.  If true, this would warrant dismissal of those plaintiffs' claims under Section 10(b) and 20(a) of the 1934 Exchange Act, because such claims require a misstatement before or contemporaneous with a securities transaction.  See Vacold LLC v. Cerami, 545 F.3d 114, 121-22 (2d Cir. 2008).  Similarly, to the extent plaintiffs are relying on statements made after their share purchases, their common law fraud, negligent misrepresentation, and unjust enrichment claims must fail.

At oral argument on May 8, 2015, the court addressed the question of whether any plaintiffs are claiming reliance on misrepresentations post-dating their purchases.  Subsequent to that argument, plaintiffs submitted a supplement to the complaint clarifying exactly which representations each named plaintiff purports to have relied upon at the time of his or her investment in Life Medical.  The supplement makes plain that the plaintiffs who purchased their shares before 2010 did so in reliance on particular misrepresentations by Fitzgerald or Life Medical that occurred before the share purchases.  These misrepresentations included materials such as financial projections and statements on the Life Medical website.  They also included statements about the state of Life Medical's business made by Fitzgerald in meetings or telephone calls.

To be sure, the numerous plaintiffs in the complaint who claim reliance on individual oral misrepresentations in personal meetings with Life Medical officers present the court with individualized questions.  The court will not lightly assume that Life Medical or its officers made identical oral representations to all the plaintiffs in this case. Furthermore, certain plaintiffs allege that they relied on written documents that have not yet been produced or scrutinized, including

various financial projections, materials from Life Medical's website, or business plan documents predating the 2010 business plan. However, all the plaintiffs have now made clear which particular statements they relied upon. No plaintiffs purport to have relied upon statements post-dating their purchases.

Moreover, all the alleged misrepresentations—which range from Life Medical's planned uses of investment money to the status of its regulatory approvals and its distribution agreements—cut to the core of Life Medical's business and its prospects for success. Taking the complaint as true and drawing reasonable inferences in favor of plaintiffs, defendants made these misrepresentations at least recklessly.

The court therefore declines to dismiss plaintiffs' fraud claims on the grounds that plaintiffs have not made clear which misstatements they relied upon, or that they have not alleged the misstatements with the required particularity.

## II.   Whether Plaintiffs Could Have Reasonably Relied on the Alleged Misrepresentations

Defendants argue that some or all plaintiffs could not have reasonably relied on the misrepresentations alleged in the complaint. First, defendant Fitzgerald argues that warnings and disclaimers contained in the 2011 PPM counteracted any prior alleged

misrepresentations made to plaintiffs who in fact purchased in reliance on the 2011 PPM.  Second, defendants Life Medical, Kelly, and Lierman argue that the claims of the plaintiffs who purport to have relied on oral misrepresentations between 2007 and 2009 must fail because merger clauses in plaintiffs' subscription agreements precluded their reliance on such statements.

To be sure, the 2011 PPM contained certain boilerplate cautionary language alerting investors to the possibility of loss.  And all plaintiffs purchased their shares pursuant to subscription agreements containing merger clauses purporting to preclude reliance on earlier statements. See, e.g., Dkt. No. 51, Rickner Decl. 2 Ex. 2 at 12.  However, controlling precedent supports the theory that cautionary language in investor materials is insufficient to preclude reasonable reliance on separate misrepresentations, especially where plaintiffs are not sophisticated investors.  See, e.g., P. Stolz Family P'ship L.P. v. Daum, 355 F.3d 92, 97-98 (2d Cir. 2004) ("Misrepresentation of present or historical facts cannot be cured by cautionary language.").  Similarly, merger clauses in subscription agreements do not necessarily preclude reasonable reliance on earlier oral representations where, as here, plaintiffs are not undisputedly sophisticated and the agreements were not negotiated.  See

- 10 -

Anglo-German Progressive Fund, Ltd., No. 09 Civ. 8708, 2010 WL 3911490 (S.D.N.Y. Sept. 14, 2010).

Defendants have not shown that plaintiffs' claims should be dismissed on the ground that plaintiffs could not have reasonably relied on defendants' representations.

### III.   Whether Plaintiff's Section 10(b) Claims are Untimely

Defendants argue that some of plaintiffs' claims under Section 10(b) and Rule 10b-5 are barred, either by the five-year statute of repose or the two-year statute of limitations governing such claims.

Statutes of limitations and statutes of repose function differently:

> [S]tatutes of limitations bear on the availability of remedies and, as such, are subject to equitable defenses . . . , the various forms of tolling, and the potential application of the discovery rule. In contrast, statutes of repose affect the availability of the underlying right: That right is no longer available on the expiration of the specified period of time. In theory, at least, the legislative bar to subsequent action is absolute, subject to legislatively created exceptions . . . set forth in the statute of repose.

P. Stolz Family P'ship, L.P. v. Daum, 355 F.3d 92, 102 (2d Cir. 2004) (citing Calvin W. Corman, Limitation of Actions, § 1.1, at 4–5 (1991)).

For claims under Section 10(b), the statute of limitations starts running "two years from the date upon which a reasonably diligent plaintiff would have sufficient information about that fact to adequately

plead it in a complaint." <u>Arco Capital Corp. v. Deutsche Bank AG</u>, 949 F. Supp. 2d 532, 545 (S.D.N.Y. 2013).  The five-year statute of repose for the same claims begins to run "on the dates the parties have committed themselves to complete the purchase or sale of transaction." <u>Id.</u> at 544 (internal quotation and citation omitted).  Accordingly, "a repose period can run to completion even before injury has occurred to a potential plaintiff, extinguishing a cause of action before it even accrues." <u>P. Stolz Family</u>, 355 F.3d at 93.

Here, plaintiffs filed suit on May 13, 2014.  The complaint, taken as true, indicates that plaintiffs could not have brought suit under Section 10(b) until August 2012, when defendants first provided plaintiffs with information showing that Life Medical had misallocated investment money.  However, defendants are right that the five-year statute of repose bars the Section 10(b) claims of plaintiffs who purchased their shares before May 13, 2009, because they brought suit more than five years after completing their share purchases.

Fifteen investors named in the complaint fall into the latter category.  Those plaintiffs' claims for relief under Section 10(b) are dismissed.

### IV.    Whether Plaintiffs' Mismanagement Claims Must be Brought as Derivative Claims

Plaintiffs' fifth and sixth causes of action allege, respectively, breach of fiduciary duty against directors Kelly and Lierman, and common law negligence against Life Medical, Kelly, and Lierman. Defendants contend that these claims must be brought as derivative, not direct claims. According to defendants, plaintiffs' alleged injuries—losses from diminution in the value of Life Medical shares—derive from harms to the corporation itself, and plaintiffs therefore lack standing to bring these claims directly against the corporation or its directors. (See Dkt. No. 22, Am. Compl. ¶¶ 7, 70-74, 163.)

Plaintiffs counter that the injuries were individual and direct, not derivative. They argue that the essence of their breach of fiduciary duty and negligence claims is that defendants deprived plaintiffs of shareholder rights by entrenching their own control of Life Medical, denying plaintiffs' rights to oversight, misusing plaintiff's investment money, and failing to discharge their duties with loyalty and reasonable care. See id. ¶¶ 155-69.)

Under Delaware law, aggrieved shareholders generally lack standing to bring direct claims for mismanagement of a corporation. See Kramer v. W. Pac. Indus. Inc., 546 A.2d 348, 350 (Del. 1988). However,

such direct claims may be brought where they allege a "special injury" to the shareholder. <u>Tooley v. Donaldson, Lufkin & Jenerette, Inc.</u>, 845 A.2d 1031, 1034-39 (Del. 2004).  The determination of whether a claim is direct or derivative depends "solely on the following questions: (1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of the recovery or other remedy (the corporation or the stockholders, individually)?" <u>Id.</u> at 1033.  For a claim to be direct, the court must find that the defendants' actions "directly and individually harmed the stockholders, without injuring the corporation." <u>Id.</u> at 1038.

Here, plaintiffs' mismanagement claims are derivative in nature. Plaintiffs do not allege individual, direct harms.  Rather, the gravamen of their mismanagement claims is that Life Medical and its directors and officers abused and neglected the company.  As a consequence of that derogation of duty, Life Medical's business failed and plaintiffs' shares declined in value.  Thus, it is Life Medical which has standing to bring these claims.

Plaintiffs unpersuasively attempt to characterize their mismanagement claims as entrenchment claims.  Entrenchment claims can, under certain circumstances, be brought directly.  <u>See, e.g.</u>,

- 14 -

Carmody v. Toll Bros., Inc., 723 A.2d 1180, 1189 (Del. Ch. 1998); In re Gaylord Container Corp. S'holders Litig., 747 A.2d 71, 84-85 (Del. Ch. 1999). But in the aforementioned cases, plaintiffs were directly challenging directors' defensive tactics in maintaining control over companies. Here, the gravamen of the mismanagement claims is just that—mismanagement. Plaintiffs allege in substance that defendants abused and neglected their basic duties to operate Life Medical competently and in good faith. These claims belong to Life Medical. There is no reason that the damages flowing from the alleged malfeasance should pass to plaintiffs instead of Life Medical itself.

Plaintiffs also argue that the court should afford them a chance to amend the complaint to add derivative claims. In the alternative, plaintiffs argue that the court should construe the complaint's purportedly direct claims as derivative claims. They contend that the existing pleadings suffice to support the requirement of demand futility.

Defendants respond that re-pleading or construing the mismanagement claims as derivative would be futile or would engender a conflict of interest between plaintiffs' claims against the Life Medical on the one hand, and on its behalf on the other. However, courts in this Circuit have permitted plaintiffs to pursue derivative claims on behalf of

a corporation simultaneously with claims against the same corporation. See, e.g., Cords-Auth v. Crunk, LLC, 815 F. Supp. 2d 778, 794 (S.D.N.Y. 2011). Here, there is no obvious factual nexus linking the securities fraud and mismanagement claims that might impair plaintiffs from vigorously pursuing both—the former against the corporation and the latter on its behalf. If plaintiffs proceed on a derivative basis with their claims in the fifth and sixth causes of action, the only claim that need be dismissed is the negligence claim against Life Medical in the sixth cause of action.

Plaintiffs have pleaded facts sufficient to support demand futility, and the complaint is otherwise sufficient to support bringing the fifth and sixth causes of action as derivative claims.

The fifth and sixth causes of action may go forward as derivative claims. Accordingly, the motion to dismiss the fifth and sixth causes of action is denied except that the sixth cause of action, which is a derivative claim on behalf of Life Medical, may not proceed against Life Medical.

- 16 -

### V. Whether the Common Law Fraud and Negligent Misrepresentation Claims are Untimely as to Plaintiffs who Purchased Shares Before May 13, 2008

Defendants contend that the claims of fraud and negligent misrepresentation must be dismissed as time-barred as to plaintiffs who purchased Life Medical shares before May 13, 2008.

Under New York law, claims for fraud and negligent misrepresentation must be brought within six years of the commission of the fraud, or two years from the time plaintiff discovered or should have discovered it, whichever is later.  See, e.g., Whitney Holdings, Ltd. v. Givotovsky, 988 F. Supp. 732, 748 (S.D.N.Y. 1997).  Here, as discussed above, plaintiffs have adequately pleaded that they discovered Life Medical's misrepresentations in August, 2012, and could not have reasonably discovered them earlier.  And plaintiffs brought suit less than two years after that date.  Therefore plaintiffs' claims for common law fraud and negligent representation are not dismissed as untimely.

### VI. Whether the Unjust Enrichment Claims Must Be Dismissed

Defendants argue that plaintiffs' unjust enrichment claims must be dismissed.  Specifically, defendants contend that claims for unjust enrichment—a quasi-contractual remedy—are precluded because plaintiffs made their share purchases pursuant to subscription

- 17 -

agreements—which is to say, valid contracts.  Furthermore, defendants argue that unjust enrichment claims as to plaintiffs who purchased Life Medical shares before May 13, 2008 must be dismissed pursuant to a six year statute of limitations.

To be sure, under New York Law, quasi-contractual relief is generally unavailable when a valid contract governs the subject matter of the dispute.  See, e.g., Matana v. Merkin, 957 F. Supp. 2d 473, 495 (S.D.N.Y. 2013).  However, it may be available in the absence of "a valid written agreement . . . *the scope of which clearly covers the dispute between the parties.*"  Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (N.Y. 1987) (emphasis added).

Here plaintiffs have alleged deceptions and misstatements that occurred outside of the subscription agreements, touching subject matter that may or may not have been covered by the subscription agreements.  Thus defendants have not shown that the unjust enrichment claims are precluded by the subscription agreements.

Nor have defendants shown that the unjust enrichment claims are time-barred.  "Under New York law, the six-year limitations period for unjust enrichment accrues upon the occurrence of the wrongful act . . . and not from the time the facts constituting the fraud are discovered."

- 18 -

<u>Cohen v. S.A.C. Trading Corp.</u>, 711 F.3d 353, 364 (2d Cir. 2013) (internal quotation and citation omitted). Defendants suggest that the "wrongful act" in this case is the sale of Life Medical shares, so that plaintiffs who purchased shares before May 13, 2008 cannot now bring claims. But the sales alone did not constitute unjust enrichment. Taking the complaint as true, the elements of the unjust enrichment claims were not satisfied until some years after many plaintiffs' share purchases, when defendants actually misused plaintiffs' money.

The court declines to dismiss plaintiffs' unjust enrichment claims.

## Conclusion

The motions by Life Medical, Kelly and Lierman, and Fitzgerald to dismiss the amended complaint are granted in part and denied in part. The motions are granted in that claims under Section 10(b) of the 1934 Exchange Act by plaintiffs who purchased Life Medical Shares prior to May 13, 2009, are dismissed. Furthermore, plaintiffs' fifth and sixth causes of action are derivative claims, and therefore the sixth cause of action may not proceed against Life Medical. In all other respects, the motions to dismiss are denied.

This resolves the motions listed at numbers 27, 30, and 33 in this case, 14 Civ. 3464.

So ordered.

Dated: New York, New York
      September 29, 2015

                                        Thomas P. Griesa
                                        United States District Judge